**So Ordered.**

**Dated: August 15th, 2023**



Frederick P. Corbit
**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>JOSEPH F. COATES,<br><br>         Debtor. | Case Nos.    17-02386-FPC11<br>                23-00274-FPC13<br><br>**MEMORANDUM OPINION AND ORDER DISMISSING THE CHAPTER 13 CASE AND CONVERTING THE CHAPTER 11 CASE TO A CHAPTER 7 CASE**<br><br>**Not for Publication** |

## INTRODUCTION

Due to a material default, the debtor can no longer effectuate the purpose of his Chapter 11 plan and, therefore, seeks to dismiss his Chapter 11 case and reorganize his debts in a Chapter 13 case. The United States Trustee (the "UST"), the debtor's largest unsecured creditor, and the Chapter 13 Trustee have all lodged objections. Central to these objections are allegations of bad faith and fraud. Consequently, the Court has been called upon to resolve the following matters: First, whether the proposed Chapter 13 plan is confirmable? Second, if the proposed Chapter 13 plan is not confirmable, whether the Chapter 13 case should be dismissed? Third, if the Chapter 13 case is dismissed, whether the Chapter 11 case should be dismissed or converted to a Chapter 7 case? And finally, if the Chapter 11 case is dismissed, whether such dismissal should be with prejudice pursuant to § 349?[1]

---

[1] These matters arise in connection with Mr. Coates' Chapter 11 case (17-02386-FPC11) and Chapter 13 case (23-00274-FPC13). Consequently, this order will be entered in both cases.

ORDER DISMISSING AND CONVERTING - 1

To answer these questions, the Court makes the following findings of fact and conclusions of law, which lead to an order dismissing the Chapter 13 case and converting the Chapter 11 case to a Chapter 7 case.

## FACTUAL BACKGROUND

### 1.    The Chapter 11 Petition

Mr. Coates first sought protection under the Bankruptcy Code in August of 2017, when he filed an individual Chapter 11 petition.[2] Mr. Coates' debts were primarily unsecured and totaled just over 1.5 million dollars.[3] His two largest unsecured creditors are the Internal Revenue Service, which has a priority unsecured claim in the amount of $185,357, and Karen Coates, Mr. Coates' ex-wife ("Ms. Coates"), who has a nonpriority unsecured claim in the amount of $1,333,833.[4] Ms. Coates' claim is for monies owed pursuant to the property equalization settlement as set forth in Mr. and Ms. Coates' divorce decree; and represents Ms. Coates' community interest in CCNW.[5]

### 2.    The Confirmed Chapter 11 Plan

Mr. Coates' proposed Chapter 11 plan provided for full payment to all creditors, including Ms. Coates.[6]  To accomplish this, Mr. Coates committed his monthly salary, as well as quarterly ownership dividend draws, to the funding of the Chapter 11 plan.[7] As both his salary and ownership dividends stemmed from CCNW, the company was integral to the success of the Chapter 11 plan. Accordingly, the proposed plan provided that Mr. Coates would retain his

---

[2] Case No. 17-02386, ECF No. 1.
[3] Case No. 17-02386, ECF Nos. 1, 60. Based on the record it is unclear as to whether Navy Federal Credit Union held a secured claim against Mr. Coates for the real property located at 9202 N Riverside State Park, Nine Mile Falls, Wa 99206. Mr. Coates does not include the property or the creditor in his schedules in either the Chapter 11 case or Chapter 13 case. In his confirmed Chapter 11 plan, Mr. Coates stated that the claim of NFCU was assigned to Ms. Coates in their dissolution decree. (*See* Case No. 17-02386, ECF No. 95). However, in the Chapter 13 case, NFCU filed an objection to confirmation as the proposed Chapter 13 plan failed to provide for NFCU's secured claim. (*See* Case No. 23-00274, ECF No. 31).
[4] Case No. 17-02386, ECF No. 1.
[5] Case No. 17-02386, ECF No. 91, ex. 3. The 1.2 million in payments was to be paid by forty quarterly payments of $30,000.[5]
[6] Case No. 17-02386, ECF No. 95.
[7] *Id.*

ORDER DISMISSING AND CONVERTING - 2

ownership interest in, and continue his employment with, CCNW "at least to the extent necessary to carry out the terms of the Plan."[8] The proposed plan additionally provided that notice was required before estate property could be liquidated.[9] With these assurances, Mr. Coates' proposed Chapter 11 plan was confirmed on April 17, 2018.[10]

### 3. The Modification

On August 24, 2020, Mr. Coates filed a modification to his confirmed Chapter 11 plan wherein he sought to reduce the amount of Ms. Coates' quarterly payments.[11] In his disclosure statement, Mr. Coates represented that modification of the confirmed Chapter 11 plan was necessary due to the anticipated loss of gross income stemming from CCNW's closure of its Canadian operations and economic fallout from Covid-19.[12] Based on these representations, Ms. Coates consented to the proposed modification and, on November 19, 2020, the Court signed an order approving the payment modification.[13] Nothing in Mr. Coates' requested modification or disclosure statement suggested that a buyout of his ownership interest may be forthcoming.[14] Yet, while approval of the proposed modification was still pending, and, notwithstanding the covenants of the confirmed Chapter 11 plan, Mr. Coates entered into negotiations regarding the buyout of his interest in, and termination of his employment with, CCNW.[15]

---

[8] Case No. 17-02386, ECF No. 95. Article X provides "Debtor shall continue to manage Debtor's Business as it existed on [the] Petition Date." Article XXI provides "Debtor intends to continue to operate and conduct Debtor's Business . . . at least to the extent necessary to carry out the terms of the Plan." Article I defined *Debtor's Business* as "Debtor's 25% interest in Control Components Northwest, Inc."
[9] Case No. 17-02386, ECF No. 95. Article X, Drop Dead Provision, requiring "notice and hearing." Article XXVI, Modification of the Plan, requiring "fifteen days prior notice" of "a change to the manner, terms, and/or conditions of any sale or liquidation of Property of the Estate."
[10] Case No. 17-02386, ECF No. 17-02386; *see also* Chapter 11 Plan at ECF No. 76, Amended Chapter 11 Plan at ECF No. 95, Second Amended Chapter 11 Plan at ECF No. 109.
[11] Case No. 17-02386, ECF No. 182.
[12] Case No. 17-02386, s*ee* ECF No. 183.
[13] Case No. 17-02386, ECF No. 201.
[14] *Id*.
[15] Case No. 17-02386, ECF Nos. 276, 280, entries mirrored at Case No. 23-00274, ECF Nos. 62, 66. Mr. Coates testified that the negotiations were initiated by Mr. Steer, and at the time the negotiations began, Mr. Steer and Mr. Coates were the sole remaining owners of CCNW, each having an equal ownership interest in CCNW.

ORDER DISMISSING AND CONVERTING - 3

**4.    The Stock Redemption Agreement**

On November 30, 2020, Mr. Coates transferred his 25% ownership interest in CCNW by a stock redemption agreement (the "SRA"). The SRA provided that, in exchange for his 1000 shares in CCNW, Mr. Coates would receive 48 monthly payments of $4,636, for a total amount of $225,000 (the "SRA Proceeds").[16] The SRA payments commenced on January 1, 2021.[17] Mr. Coates did not disclose the sale of his interest in CCNW, nor did he disclose that his employment with CCNW had been terminated.[18] The financial reports filed by Mr. Coates in no way indicated the transaction.[19]

Having lost his job and his ownership interest in CCNW, Mr. Coates possibly could have been described as an honest, but unfortunate debtor; however, as discussed below, his failure to disclose the SRA and use of the SRA Proceeds, lead to a different conclusion.

**5.    The Chapter 11 Motion to Dismiss**

Approximately six months after entering into the SRA and leaving the employment of CCNW, Mr. Coates defaulted on his Chapter 11 plan payments.[20] On September 26, 2022, more than one year after his default, Mr. Coates moved to dismiss his Chapter 11 case, claiming that he was unable to make plan payments "due to a change in employment."[21] It was only later, in response to the United States Trustee's (the "UST") objection, that Mr. Coates disclosed he only sought dismissal of the Chapter 11 case so that he could attempt to address his debts in a Chapter 13 case.[22] The UST and Ms. Coates objected to dismissal and requested the Court instead convert the case to Chapter 7 to allow for the investigation of Mr. Coates' conduct as it pertains to the sale of his ownership interest in CCNW and his use of the sale proceeds.[23] Alternatively, if the Court were to grant dismissal of the Chapter 11 case, they asked that the dismissal be with prejudice pursuant to § 349.

---

[16] Case No. 17-02386, ECF Nos. 276, 280, entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] Case No. 17-02386, *see* ECF Nos. 214, 227, 229, 231, 233.
[21] Case No. 17-02386, ECF No. 239.
[22] Case No. 17-02386, ECF No. 239, 253, 255.
[23] Case No. 17-02386, ECF Nos. 243, 254, 270.

ORDER DISMISSING AND CONVERTING - 4

On February 8, 2023, an initial hearing on Mr. Coates' motion to dismiss was held.[24] After reviewing the record and hearing from the interested parties, including Mr. Coates, the UST, and Ms. Coates, the Court determined that it was in the best interest of all parties to allow Mr. Coates to file a concurrent Chapter 13 case, because only upon examining Mr. Coates' proposed Chapter 13 plan could it be ascertained whether the plan was feasible, in the best interest of the creditors, and filed in good faith.[25] Upon this determination, the Court put Mr. Coates under oath and instructed him to deposit all SRA Proceeds into a separate bank account where they were to be held pending further order of the Court.[26] Mr. Coates confirmed that he understood and would comply with the Court's order.[27] The hearing was continued to July 12, 2023.

## 6.    The Chapter 13 Petition[28]

On March 10, 2013, Mr. Coates filed a voluntary petition under Chapter 13 and submitted his proposed Chapter 13 plan.[29] Mr. Coates' initial schedules indicated that he had received $55,632 in SRA Proceeds in 2021 and 2022, and $13,908 in 2023.[30] The schedules additionally indicated that he was still owed $97,356, or 21 payments, by CCNW under the SRA.[31] However, a complete and accurate accounting of these funds was not provided.

Under the proposed Chapter 13 plan, Mr. Coates was to make an initial payment of $6,436 on April 1, 2023.[32] A $5,000 plan payment was due May 1, 2023, and again on June 1, 2023.[33] The next 18 monthly payments were to be in the amount of $6,186, and the final 39 payments were to be in the amount of $1,550.[34] Despite, his assurances that the proposed Chapter 13 plan was feasible and that he would make plan payments, Mr. Coates failed to make the $6,436 April

---

[24] Case No. 17-02386, ECF Nos. 260, 261.

[25] *Id*.

[26]  *Id*.

[27] *Id*.

[28] Rebecca Sheppard was Mr. Coates' attorney of record in the Chapter 13 case.

[29] Case No. 23-00274, ECF Nos. 1, 7. Strangely, Mr. Coates' statement of financial affairs, indicated that he was still presently "an officer, director, or managing executive of [CCNW]," and "an owner of at least 5% of the voting or equity securities of [CCNW]."

[30] Case No. 23-00274, ECF Nos. 1, 7.

[31] Case No. 23-00274, ECF No. 1, Schedule A/B.

[32] Case No. 23-00274, ECF No. 50.

[33] *Id*.

[34] *Id*.

payment and paid only \$1,000 of the \$5,000 due for May.[35] Mr. Coates brought his proposed Chapter 13 plan payments current shortly before the July 12, 2023, hearing.[36]

## 7. The Proposed Chapter 13 Plan

Though modified multiple times, the proposed Chapter 13 plan was plagued by objections from the Chapter 13 Trustee.[37] These objections largely stemmed from Mr. Coates' conduct in the Chapter 11 case with regard to the SRA.[38] Specifically, because Mr. Coates had provided conflicting information as to the number of SRA payments remaining and had failed to provide an accounting as to the disposition of the SRA Proceeds, the Chapter 13 Trustee was unable to complete the feasibility analysis.[39] The Chapter 13 Trustee also expressed concerns that Mr. Coates was not committing all available disposable income to the funding of the proposed plan and that some of his expenses were neither reasonable nor necessary.[40] Ms. Coates also filed an objection to confirmation of the proposed Chapter 13 plan, based on allegations of fraud in the Chapter 11 case, and a lack of good faith – both in the filing of the case and proposal of the plan.[41]

## 8. The Hearing

A hearing on the matters in both the Chapter 11 case and the Chapter 13 case was held on July 12, 2023, and July 14, 2023.[42] Over the course of the two-day hearing, the Court heard arguments of counsel and considered the testimony of Mr. Coates, as well as the testimony of Ms. Coates.[43] Mr. Coates' testimony was often incomplete and inconsistent with information he had provided in his filings, these inconsistencies substantially reduced his credibility in testifying on critical issues. The Court found the testimony of Ms. Coates to be credible. At the conclusion of the hearing, the Court ordered the Chapter 13 Office to hold the funds collected in

---

[35] Case No. 23-00274, ECF No. 36.
[36] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[37] Case No. 23-00274, ECF Nos. 26, 34, 36, 53.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] Case No. 23-00274, ECF No. 43.
[42] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[43] *Id.*

ORDER DISMISSING AND CONVERTING - 6

this case.[44] The proposed disbursement of those funds would be set forth in the Court's written order, which would provide a ten-day objection period.[45] Additionally, the Court granted Ms. Sheppard until July 20, 2023, to file the application for an award of compensation for her services rendered in the Chapter 13 case.[46] Parties were given until July 28, 2023, to object to the application.[47]

## 9. Compensation in the Chapter 13 Case

Ms. Sheppard timely filed her application for compensation, which sought $10,773.75 in fees for her work in connection with representing Mr. Coates in the Chapter 13 proceeding.[48] No objections were filed.[49] The Court reviewed Ms. Sheppard's application, and upon finding the fees reasonable and necessary, granted her application.[50]

The Chapter 13 Trustee's Office claims it is entitled to $3,073.60 in fees for its services in the Chapter 13 case.[51] However, as the Ninth Circuit has recently ruled, Chapter 13 trustees may not be entitled to a fee, based on a percentage of plan payments, as compensation for work in Chapter 13 cases if the Chapter 13 plan is not confirmed.[52] Accordingly, interested parties may object to the Chapter 13 Trustee's claim that it is entitled to a fee of $3,073.60 in this case.

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] Case No. 23-00274, ECF No. 68.
[49] Case No. 23-00274, ECF No. 71.
[50] Case No. 23-00274, ECF No. 73.
[51] *See* 28 U.S.C. § 586(e)(2).
[52] *Matter of Evans*, 69 F.4th 1101, 1103 (9th Cir. 2023).

ORDER DISMISSING AND CONVERTING - 7

## DISCUSSION

Two of the fundamental principles in bankruptcy are providing a fresh start to the honest but unfortunate debtor and ensuring fairness to creditors.[53] As a means of balancing these two, often competing principles, the Bankruptcy Code allows for judicial dismissal or conversion of a debtor's Chapter 11 or Chapter 13 case, for cause.[54]

## Discussion: The Chapter 13 Case

There are two separate and distinct tranches of good faith in Chapter 13 cases.[55] The debtor must have filed the Chapter 13 case in good faith *and* have proposed the Chapter 13 plan in good faith.[56] The good faith inquiry is relevant in matters of confirmation as well as dismissal or conversion.[57]

## A.     Bad Faith Constitutes Cause

Bankruptcy is not a haven for dishonest or evasive behavior, those who seek the shelter of bankruptcy must do so in good faith. Consequently, while not expressly enumerated in § 1307(c), the Ninth Circuit Court of Appeals has held that "cause" for dismissal or conversion includes filing a petition in bad faith.[58]

---

[53] *See Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934); *In re Johnston*, 209 F.3d 611 (6th Cir. 2000); *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107, 166 L. Ed. 2d 956, 961 (2007); *Local Loan Co.*, 292 U.S. at 244 ("[I]t gives to the honest but unfortunate debtor…a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.").

[54] 11 U.S.C. §§ 1112(b), 1307(c); *see In re Zamora*, No. 19-01040-WLH13, 2020 WL 4289926, at *7 (Bankr. E.D. Wash. July 27, 2020).

[55] *In re Torres Martinez*, 397 B.R. 158, 165 (B.A.P. 1st Cir. 2008) (emphasis added); *see also* 11 U.S.C. § 1325(a)(7) (good faith requirement in filing petition), § 1325(a)(3) (good faith requirement in proposing plan).

[56] *Id.*

[57] *See* 11 U.S.C. §§ 1307, 1325.

[58] *In re Blendheim*, 803 F.3d 477, 499 (9th Cir. 2015) (citing *In re Eisen*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam)); *see also Marrama*, 549 U.S. at 367 ("Bankruptcy courts routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause," and a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of bad faith is tantamount to a ruling that the individual does not qualify as a Chapter 13 debtor.").

ORDER DISMISSING AND CONVERTING - 8

## B. Totality of the Circumstances

Bankruptcy courts use a totality of the circumstances analysis to determine whether a debtor acted in good faith.[59] Among other things, this comprehensive analysis requires a court to consider the following factors: (1) the debtor's history of filings and dismissals; (2) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present.[60]

Consideration of the totality of the circumstances means that no one factor is determinative, the court must make its determination in the light of all militating factors, including a debtor's pre-petition conduct.[61] Importantly, a finding of bad faith requires neither malice nor fraudulent intent.[62]

### 1. Factor One: History of Filings and Dismissals

The bankruptcy process requires full disclosure, transparency, and candor.[63] Mr. Coates failed to satisfy these requirements in his Chapter 11 case. Indeed, much of what transpired in the Chapter 11 case only came to light during the pendency of the Chapter 13 case.[64] His conduct in the Chapter 11 case, as discussed more fully below in factor four, provides the backdrop for many of the considerations now before the court.

---

[59] *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).

[60] *In re Duran*, 630 B.R. 797, 810 (B.A.P. 9th Cir. 2021) (citing *In re Leavitt*, 171 F.3d at 1224).

[61] *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982); *see In re Lanham*, 346 B.R. 211, 214 (Bankr. D. Colo. 2006) ("Lack of good faith is shown . . . when a debtor's conduct before . . . a case constitutes an abuse of the provisions, purpose or spirit of the Chapter under which relief is sought.").

[62] *In re Leavitt*, 171 F.3d at 1224.

[63] *In re Zamora*, 2020 WL 4289926, at *5 (*see, e.g.*, *L. v. Siegel*, 571 U.S. 415, 427, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) (articulating denial of discharge, judicial sanctions, and criminal sentencing as examples of ways in which courts could address dishonest debtors); *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (noting how "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system"); *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966) ("The conduct of bankruptcy proceedings not only should be right but must seem right.")).

[64] *See* ECF No. 270, Case No. 17-02386; Case No. 23-00274, ECF No. 43. Indeed, had it not been for the Chapter 13 case, details of the SRA agreement may have remained in the dark.

ORDER DISMISSING AND CONVERTING - 9

2. Factor Two: Misrepresentation, Unfair Manipulation of the Bankruptcy Code, Inequitable Conduct

The successful functioning of bankruptcy hinges both upon the debtor's veracity and his willingness to make a full disclosure.[65] A debtor's petition, together with the schedules and statements, must be accurate and reliable, without the necessity of creditors and the trustee "digging out and conducting independent examinations to get the facts."[66] Nor can debtors intentionally fail to disclose required material information on their schedules or act in reckless disregard of the truth, and then expect that all is cured by filing amendments to those schedules after they have been caught.[67]

*a. Mr. Coates misrepresented and omitted facts in his Chapter 13 petition and plan.*

Mr. Coates failed to provide complete and accurate information in his Chapter 13 petition, schedules, and proposed plan. In his schedules, Mr. Coates inaccurately disclosed his assets, income, debts, and expenses.[68] And in his proposed plan, Mr. Coates failed to commit all available disposable income to funding the plan and failed to provide a full and accurate accounting of the SRA Proceeds.[69]

It was only after he was challenged by the objections to confirmation that Mr. Coates began to address his omissions and misrepresentations.[70] Each objection brought amended schedules and a modified plan, each revealing just a little more information as to Mr. Coates' true financial situation.[71] For instance, it was not until the third modification that Mr. Coates admitted to commingling and

---

[65] *In re Korte*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) (*see* generally *In re Guajardo*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("The Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole.")).
[66] *In re Korte*, 262 B.R. at 474 (s*ee In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)).
[67] *In re Hannon*, 839 F.3d 63, 71 (1st Cir. 2016) (quoting *In re Tully*, 818 F.2d 106, 112 (1st Cir. 1987)).
[68] Case No. 23-00274, ECF Nos. 1, 40, 49, 57.
[69] Case No. 23-00274, ECF Nos. 38, 50.
[70] Case No. 23-00274, *see* ECF Nos. 26, 31, 34, 36, 43, 53, for objections and *see* ECF Nos. 38, 40, 49, 50, 57, for amendments and modifications.
[71] *Id*.

ORDER DISMISSING AND CONVERTING - 10

expending SRA Proceeds and then committed to replacing and remitting those funds to the Chapter 13 Trustee.[72]

Similarly, it was only the impending confirmation hearing that finally compelled Mr. Coates to begin making plan payments, as required under § 1325(a)(1)(A).[73] Notwithstanding his disobedience to the confirmed Chapter 11 plan, Mr. Coates has assured creditors, the Chapter 13 Trustee, the UST, and the Court, that his proposed Chapter 13 plan is feasible and that he will timely remit all plan payments.[74] However, based on his performance in the Chapter 11 case and his performance, or lack thereof, in the Chapter 13 case thus far, the Court would be remiss to put much stock in Mr. Coates' assurances – the best predictor of future behavior is past behavior in a similar situation.

### b. Mr. Coates' conduct was inequitable.

A full accounting of the SRA Proceeds has yet to be made. The accounting statements provided by Mr. Coates contained discrepancies and inconsistencies and proved unreliable.[75] During the hearing, Mr. Coates was unable to satisfactorily clarify the accounting.[76] As noted by the Chapter 13 Trustee, Mr. Coates remains the only person with knowledge as to the actual disposition of the SRA Proceeds. Such conduct cannot be considered equitable.

### c. Mr. Coates attempted to manipulate the bankruptcy code.

Technical compliance with the Code in and of itself is insufficient to establish good faith.[77] There must also be some assurance that the debtor who has invoked the reorganization provisions of the Code does so with the purpose of accomplishing the aims and objections of bankruptcy philosophy and policy.[78] Mr. Coates was permitted to amend his petition and schedules as a matter of course and modify his proposed plan in response to objections to confirmation. However, the

---

[72] Case No. 23-00274, ECF No. 50.

[73] 11 U.S.C. § 1326(a)(1)(A) provides: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount proposed by the plan to the trustee.

[74] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.

[75] Case No. 17-02386, ECF No. 256.

[76] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.

[77] *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995).

[78] *Id*.

ORDER DISMISSING AND CONVERTING - 11

manner, content, and timing of these amendments and modifications reveal Mr. Coates' earlier misrepresentations and omissions. This conduct leads to the finding that Mr. Coates was unfairly manipulating the bankruptcy code.

The Court finds that Mr. Coates misrepresented and omitted material facts, unfairly manipulated the Bankruptcy Code, and engaged in inequitable conduct. As such, this factor supports dismissal or conversion.

### 3. Factor Three: Intent to Defeat State Court Action

Bad faith may be found where a debtor's overriding motivation is to avoid an obligation resulting from divorcing a former spouse.[79] The dissolution decree required Mr. Coates to maintain life insurance, with Ms. Coates as the named beneficiary, in an amount sufficient to maintain the property equalization payments.[80] Mr. Coates was required to provide Ms. Coates with updated proof of coverage each quarter.[81] However, due to Mr. Coates' failure to provide such proof and his attempts to change beneficiaries on the policy, Ms. Coates was granted third-party authorization, which allowed her to be notified of beneficiary changes.[82]

Based on the remaining amount due under the property equalization settlement, Mr. Coates needed to maintain approximately $800,000 in life insurance policies.[83] Mr. Coates had previously held two life insurance policies through Genworth Life, each for $500,000 and each naming Ms. Coates as beneficiary. However, as evidenced by a letter from Genworth to Ms. Coates, dated May 15, 2023, Ms. Coates is no longer the beneficiary on one of those policies; CCNW and Carrie Coats (Mr. Coates' current wife) are each 50% beneficiaries, leaving Ms. Coates the named beneficiary on only one life insurance policy in the amount of $500,000.[84] In his testimony, Mr. Coates denied having any knowledge of a beneficiary change and insisted that if there was a beneficiary change, CCNW must have been responsible for making such change.[85]

---

[79] *In re Bouchard*, 560 B.R. 385, 397–398 (Bankr. D.R.I. 2016).
[80] Case No. 17-02386, ECF No 90, ex. 3.
[81] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[82] *Id*.
[83] *Id*.
[84] *Id*.
[85] *Id*.

The Court finds that Mr. Coates' actions indicate an intent to defeat state court action and, therefore, this factor supports dismissal or conversion.

### 4. Factor Four: Egregious Behavior

Egregious behavior, such as concealing information from the court, filing inaccurate petitions, hiding or undervaluing assets, violating court orders, or otherwise demonstrating fraudulent conduct, without excuse, demonstrates bad faith and prejudices creditors.[86] In determining whether egregious behavior is present, the court is to consider both pre- and post-petition conduct.[87]

> #### a. Mr. Coates' contravention of the confirmed Chapter 11 plan was egregious.

Mr. Coates knowingly acted in contravention of his confirmed Chapter 11 plan when, without notice, he liquidated his ownership interest in, and terminated his employment with, CCNW. Mr. Coates attempts to justify his lack of disclosure by framing the sale of his ownership interest as involuntary. Mr. Coates testified that the sale was not a negotiation but rather a "take it or leave it" proposition through which he was compelled to sign the SRA.[88] Even as such, it does not excuse Mr. Coates' failure to notify the Court and his creditors. Further, this framing is inconsistent with Mr. Coates' later testimony, in which he framed himself as an active participant in negotiating the terms of the SRA.[89]

Whether voluntary or involuntary, the nature of the sale is inconsequential. Mr. Coates had a duty to give notice of any such sale to creditors, the UST, and the Court, pursuant to the terms of his confirmed Chapter 11 plan. His failure to do so constitutes an intentional material breach.

> #### b. Mr. Coates' failure to amend his disclosure statement and, thus, allowing modification of the confirmed Chapter 11 plan under false pretenses, constitutes egregious conduct.

---

[86] *See In re Chabot*, 411 B.R. 685, 704–05 (Bankr. D. Mont. 2009) (citing *In re Leavitt*, 171 F.3d at 1223–24 and *In re Cortez*, 349 B.R. 608, 613–14 (Bankr. N.D. Cal. 2006)).

[87] *In re Luxford*, 368 B.R. 63, 74 (Bankr. D. Mont. 2007) (citing *In re Pickering*, 195 B.R. 759, 765 (Bankr. D. Mont. 1996)) (citing *Neufeld v. Freeman*, 794 F.2d 149, 152–53 (4th Cir. 1986); *see also In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995).

[88] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.

[89] For example, Mr. Coates testified the parties had multiple "discussions" regarding the valuation of CCNW and engaged in "negotiations" regarding the length of the contract.

ORDER DISMISSING AND CONVERTING - 13

Only if "circumstances warrant modification" may a confirmed Chapter 11 plan be modified.[90] The circumstances warranting modification are generally set forth in a disclosure statement.[91] The Bankruptcy Code requires that the disclosure statement provide "adequate information" concerning the affairs of the debtor to enable the holder of a claim or interest to make an informed judgment about the plan.[92] Per Mr. Coates' disclosure statement, modification of the confirmed Chapter 11 plan was warranted due to the anticipated loss of gross income stemming from CCNW's closure of its Canadian operations and economic fallout from Covid-19. It was based on these specific financial hardships, that Ms. Coates consented to the reduction of her quarterly plan payment and the Court approved the modification.[93] Nothing in Mr. Coates' requested modification or disclosure statement suggested that a buyout of his ownership interest may be forthcoming.[94]

While the disclosure statement may have been accurate when it was initially filed in August of 2020, by mid-October, Mr. Coates, per his own testimony, recognized that a buyout and an end to his employment was imminent.[95] Mr. Coates had a duty to disclose this information by amending his proposed modification or otherwise notifying interested parties. Yet at no point did he do so. When questioned as to why he did not amend the modification, Mr. Coates answered that he "totally forgot."[96] Mr. Coates failed to provide full disclosure and in doing so allowed modification to his confirmed Chapter 11 plan under false pretenses.

### c. Mr. Coates' willful concealment of SRA Proceeds was egregious.

Mr. Coates willfully failed to disclose the terms of the SRA and attempted to conceal the SRA Proceeds. At no time did Mr. Coates inform the Court or meaningfully inform creditors of the transaction. Ms. Coates testified that she only learned of the SRA early in 2023.[97] For over two years, Mr. Coates received and utilized nearly $100,000 in SRA Proceeds on personal household expenses to the

---

[90] 11 U.S.C. §§ 1127(b), (e), 1193(b).
[91] 11 U.S.C. § 1125.
[92] *Id.*
[93] Case No. 17-02386, ECF Nos. 182, 183, 201.
[94] *Id.*
[95] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[96] *Id.*
[97] *Id.*

ORDER DISMISSING AND CONVERTING - 14

detriment of his creditors.[98] There is no evidence that SRA Proceeds were meaningfully utilized for plan payments.

> ### d. The circumstances of Mr. Coates' default on the confirmed Chapter 11 plan payments were egregious.

Mr. Coates' contravention of the confirmed Chapter 11 plan directly resulted in his defaulting on plan payments. Mr. Coates disputes that his ability to complete the Chapter 11 plan was contingent upon maintaining his ownership interest in and employment with CCNW.[99] He additionally disputes that by entering into the buyout he effectively eliminated his ability to make plan payments.[100] Yet that is precisely what occurred.

Six months after entering into the SRA, Mr. Coates defaulted on his plan payments and has made no further payments through the confirmed Chapter 11 plan. Even in default, Mr. Coates took no affirmative action to inform interested parties as to the situation - his only reasoning was that he was "distraught" and "optimistic payments could become viable."[101]

> ### e. Mr. Coates' misappropriation of the SRA Proceeds was egregious.

Mr. Coates knowingly misappropriated the SRA Proceeds. For over two years, Mr. Coates received payments under the SRA – payments that he neither disclosed nor made available to creditors. Despite Mr. Coates' assertion to the contrary, review of his required financial reports do not reflect the sale of his interest in CCNW, nor do they provide a complete accounting of the SRA Proceeds. In fact, the financial reports, the proposed Chapter 13 plan, and Mr. Coates' own testimony establish that Mr. Coates commingled the SRA Proceeds and utilized those funds for personal expenses.[102]

---

[98] Case No. 17-02386, ECF No. 275, ex. 205.
[99] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[100] *Id.*
[101] *Id.*
[102] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66. *See also,* Case No. 23-00274, ECF No. 50, which provides: "To the extent Debtor commingled and expended any payments he received under the Stock Redemption Plan between February 8, 2023[sic] and July 6, 2023, . . .."

ORDER DISMISSING AND CONVERTING - 15

*f. Mr. Coates' failure to adhere to the February 2023 Court Order was egregious.*

In disregard of the Court's February 2023 order, Mr. Coates admitted to commingling SRA Proceeds with his personal funds and utilizing those monies for personal household expenses. [103] When questioned as to why he failed to keep the SRA proceeds in a separate account and refrain from utilizing the funds, Mr. Coates replied, "there is no easy answer," "to some extent I forgot I was supposed to," "it has been an eight-year process" and "I was under emotional duress."[104] Such answers cannot justify his willful disregard of this Court's order or excuse the harm his disregard caused creditors.

The Court finds that Mr. Coates' repeatedly engaged in egregious conduct for which he has offered no meaningful justification; such conduct supports dismissal or conversion.

In considering the four factors, the evidence adduced at the hearing, and the totality of the circumstances, the Court finds that Mr. Coates has not acted in good faith with full appreciation of his duty as a debtor to make complete, honest, and accurate disclosures of his financial circumstances. Mr. Coates' lack of transparency and candor distinguishes him from the honest but unfortunate debtor.[105] Accordingly, the Court concludes that Mr. Coates' Chapter 13 plan cannot be confirmed pursuant to § 1325(a)(3)[106] and that cause exists to dismiss or convert the case pursuant to § 1307(c).

## C.    Best Interest of Creditors

Generally, upon finding cause, § 1307(c) also requires a court to determine which form of relief, conversion or dismissal, is in "the best interest of creditors and the estate."[107] However, due to the unique circumstances under which this Chapter 13 was permitted, the Court finds it is in the best interest of creditors to

---

[103] Case No. 17-02386, ECF No. 261.
[104] Case No. 17-02386, ECF Nos. 276, 280; entries mirrored at Case No. 23-00274, ECF Nos. 62, 66.
[105] In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "'honest but unfortunate debtor[s]'" that the bankruptcy laws were enacted to protect. *Marrama*, 549 U.S. at 373–74 (quoting *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).
[106] Requiring that, to be confirmed, a plan must be filed in good faith. 11 U.S.C. § 1325.
[107] 11 U.S.C. § 1307(c).

ORDER DISMISSING AND CONVERTING - 16

dismiss this Chapter 13 case, and as discussed below, convert the Chapter 11 case to a Chapter 7 case.

Accordingly, the Court denies confirmation of Mr. Coates' Chapter 13 plan and denies additional time to remedy any defects as he has had sufficient opportunity to present a confirmable plan. Because the best interests of the creditors and the estate favor dismissal rather than conversion, the Court dismisses the Chapter 13 case.

## Discussion: The Chapter 11 Case

Absent unusual circumstances, a bankruptcy court must dismiss or convert, upon finding cause.[108] Section 1112(b) governs the conversion or dismissal of Chapter 11 cases and includes three inquiries: (1) whether cause to grant relief exists; (2) whether the unusual circumstances exception applies; and (3) which form of relief, conversion or dismissal, is in the best interest of creditors and the estate.[109]

### A.    Statutory Cause

In its application of § 1112(b), a bankruptcy court must first determine whether "cause," as articulated by the statute, exists to dismiss or convert the Chapter 11 case.[110] Whether cause exists is a fact-intensive inquiry and must be made on a case-by-case basis, considering all relevant information.[111] Section 1112(b) sets forth a non-exhaustive list of factors constituting cause and includes material default with respect to a confirmed plan.[112]

1.    <u>Material Default with Respect to a Confirmed Plan as Cause</u>

Essential to effectuating a confirmed plan and accomplishing Chapter 11's policy objectives is ensuring that payments to creditors are made.[113]  Thus, a

---

[108] *See* 11 U.S.C. § 1112.

[109] 11 U.S.C. § 1112(b); *In re Marciano*, 459 B.R. 27, 48 (B.A.P. 9th Cir. 2011), *aff'd,* 708 F.3d 1123 (9th Cir. 2013).

[110] *In re Marciano*, 459 B.R. at 48; *see In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994).

[111] *See Matter of Young*, 76 B.R. 376 (Bankr. D. Del. 1987).

[112] 11 U.S.C. § 1112(b)(B), (E), (N).

[113] *In re Baroni*, 36 F.4th 958, 967 (9th Cir.), *cert. denied sub nom. Baroni v. Seror*, 143 S. Ct. 424, 214 L. Ed. 2d 234 (2022).

debtor's failure to make payments to creditors in contravention of a plan amounts to a material default and constitutes cause to convert or dismiss a bankruptcy case under § 1112(b)(1) and § 1112(b)(4)(N).[114]

Mr. Coates' confirmed Chapter 11 plan was funded through income derived from CCNW.[115] The confirmed Chapter 11 plan promised full payment to creditors by way of quarterly distributions from Mr. Coates' ownership interest in CCNW as well as his salary as an employee of CCNW.[116] The confirmed Chapter 11 plan did not contemplate liquidation of CCNW, its only income-generating asset. In fact, the confirmed Chapter 11 plan explicitly provided otherwise. Article X provided that the "[d]ebtor shall continue to manage Debtor's Business as it existed on [the] Petition Date" and Section XXI provided that the "[d]ebtor intends to continue to operate and conduct Debtor's Business . . . at least to the extent necessary to carry out the terms of the Plan."[117]

Despite his belief that plan "payments could become viable" through his new employment, by transferring his ownership interest and terminating his employment, Mr. Coates extinguished the confirmed Chapter 11 plan's only source of funding. In doing so, he not only contradicted the confirmed Chapter 11 plan's terms, but he also thwarted its essential purpose, as evidenced by his default on plan payments just six months later. Thus, the Court finds that Mr. Coates' actions were a material default with respect to the confirmed Chapter 11 plan.

Accordingly, the Court concludes cause, as articulated under § 1112(b)(4)(N), exists to convert or dismiss Mr. Coates' Chapter 11 case.[118]

---

[114] *See In re Kenny G Enterprises, LLC*, No. BAP CC-13-1527, 2014 WL 4100429, at *14 (B.A.P. 9th Cir. Aug. 20, 2014) (noting that failure to pay creditors as required by a confirmed plan is a material default and cause for conversion or dismissal of a debtor's case) (citing *In re AMC Mortg. Co., Inc.*, 213 F.3d 917, 921 (6th Cir. 2000)); *see also*, *In re H.R.P. Auto Ctr., Inc.*, 130 B.R. 247, 256 (Bankr. N.D. Ohio 1991) (holding three missed payments to a single creditor over the course of a year was a material default of a confirmed Chapter 11 plan).
[115] Case No. 17-02386, ECF No. 95.
[116] *Id.*
[117] Case No. 17-02386, ECF No. 95, Article I, defines *Debtor's Business* as "Debtor's 25% interest in Control Components Northwest, Inc."
[118] *See In re Kenny G Enterprises, LLC*, No. BAP CC-13-1527, 2014 WL 4100429, at *31 (B.A.P. 9th Cir. Aug. 20, 2014).

ORDER DISMISSING AND CONVERTING - 18

## B.     Unusual Circumstances Exception

Even upon finding cause, the bankruptcy court may not convert or dismiss a Chapter 11 case if it "finds and specifically identifies unusual circumstances establishing that dismissal or conversion is not in the best interest of creditors and the estate" and that the debtor's conduct triggering the request for relief was reasonably justified and curable within a reasonable time.[119] Unusual circumstance "contemplates conditions that are not common in Chapter 11 cases."[120]

The Court finds that the unusual circumstances exception to § 1112(b)(2) does not apply here. First, all parties, including Mr. Coates, do not seek continuation of the Chapter 11 case. Second, creditors have not received payments for over two years – and it is beyond the realm of possibility that Mr. Coates could cure that default within a reasonable time. Moreover, even if the default were curable, Mr. Coates' justifications for his failure to adhere to the confirmed Chapter 11 plan – namely, "I forgot," and "I don't know" are not reasonable and do not establish unusual circumstances.

## C.     Best Interest of Creditors and the Estate

Having determined that cause exists and that the unusual circumstances exception does not apply, the Court must now decide which form of relief, conversion or dismissal, is in the best interest of creditors.[121] Debtors "seeking bankruptcy protection cannot play fast and loose with their assets or with the reality of their affairs"[122] Thus, when cause is established and the bankruptcy court is tasked with deciding between conversion or dismissal, the court only considers what is in the best interest of creditors[123] – the debtor's best interests cannot be considered.[124]

---

[119] 11 U.S.C. § 1112(b)(2); *In re Baroni*, 36 F.4th at 968.

[120] *In re Baroni*, 36 F.4th 958.

[121] Only after finding "cause" does a bankruptcy court reach the issue of what to do with the case. 11 U.S.C § 1112(b).

[122] *In re Marrama*, 430 F.3d 474, 478 (1st Cir. 2005), *aff'd sub nom. Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

[123] *In re Marciano*, 459 B.R. at 48; *see In re Superior Siding & Window, Inc.*, 14 F.3d at 242.

[124] *In re Sobczak*, 369 B.R. 512, 518 (B.A.P. 9th Cir. 2007).

1.     <u>Conversion of the Chapter 11 Case is in the Best Interest of Creditors</u>

Mr. Coates materially breached the terms of the confirmed plan when, without notice to creditors, he transferred his ownership in CCNW via the SRA. In doing so, Mr. Coates extinguished the confirmed Chapter 11 plan's only funding mechanism, which led to a default in plan payments. Moreover, Mr. Coates was not transparent in his business dealings, failed to give full and accurate disclosure, and demonstrated a lack of candor. Mr. Coates has failed to establish that a reasonable justification exists for his acts and omissions. Nor has he provided a full and accurate accounting of the SRA Proceeds. If permitted to dismiss the case, even with prejudice under § 349,[125] any protections and covenants to which creditors are entitled under the terms of the Chapter 11 plan will be lost.

Consequently, the Court finds that conversion of Mr. Coates' Chapter 11 case to a Chapter 7 case is in the best interests of creditors. Conversion will allow for the appointment of an independent Chapter 7 trustee who will be able to conduct an investigation into the disposition of SRA Proceeds. The Chapter 7 trustee may additionally be able to uncover and recoup assets to which creditors may be entitled. Finally, the consensus of interested parties also supports conversion, as only the debtor seeks dismissal.

The Court concludes cause exists to convert or dismiss Mr. Coates' Chapter 11 case, and because the best interests of the creditors and the estate favor conversion rather than dismissal, the Court denies Mr. Coates' motion to dismiss the Chapter 11 case and instead orders the case converted to a Chapter 7.

---

[125] Moreover, dismissal with prejudice under § 349 is a "drastic sanction" which may affect substantial rights of the debtor and should only be used in extreme situations. *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *In re Tomlin*, 105 F.3d 933 (4th Cir. 1997).

# ORDER

Based on the foregoing, it is ordered:

1. Confirmation of the proposed Chapter 13 plan is denied;

2. The Chapter 13 Trustee's Office is authorized, if it has not already done so, to disburse $10,773.75 in attorney fees to Ms. Sheppard, as approved at ECF No. 73;

3. The Chapter 13 Trustee's Office, for its services in the Chapter 13 case, is authorized to hold $3,073.60 of the fees it collected;

4. The Chapter 13 Trustee's Office may disburse the $3,073.60 to itself as compensation for its services if no interested party objects within ten (10) days of the entry of this order;

5. In the event of a timely objection to the Chapter 13 Trustee receiving a fee for its services in the Chapter 13 case, the Chapter 13 Trustee's Office must hold in trust the $3,073.60 until this Court orders otherwise;

6. The Chapter 13 case is dismissed;

7. The motion to dismiss the Chapter 11 case is denied;

8. The Chapter 11 case is converted to a case under Chapter 7; and

9. The Chapter 13 Trustee's Office shall disburse to the Chapter 7 trustee the funds it holds in case no. 23-00274, other than the funds it is authorized to disburse for fees to Ms. Sheppard and the Chapter 13 Trustee.

///END OF ORDER///

ORDER DISMISSING AND CONVERTING - 21